UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| P.M.Q., | Case No.  2:25-cv-1843-JDP |
| Plaintiff, | |
| v. | ORDER |
| MARYSVILLE JOINT UNIFIED SCHOOL DISTRICT, *et al.*, | |
| Defendants. | |

Plaintiff P.M.Q., a minor child, alleges that defendants Marysville Joint Unified School District (hereinafter, "the District") and Kelle Pickell, a first-grade teacher, violated their rights and caused them emotional harm through a pattern of verbal abuse in Pickell's classroom.[1]  The District and Pickell move separately to dismiss plaintiff's complaint for failure to state a claim. ECF Nos. 9 & 15.  For the following reasons, defendants' motions are granted, and plaintiff's complaint is dismissed with leave to amend.

**Background**

---

[1] The court uses they/them pronouns for plaintiff because the complaint does so.

1

The following allegations are taken from plaintiff's complaint and, for purposes of the instant motions, are assumed to be true.

Plaintiff is a Latino child who was enrolled at Edgewater Elementary School, which is in the District. ECF No. 1 ¶ 13. During the 2023-2024 academic year, plaintiff was a member of Pickell's first-grade class, which "became a traumatic experience that has had profound and lasting detrimental effects." *Id*. ¶ 45.

Beginning in September 2023, plaintiff "began to exhibit signs of distress," particularly around "bringing their own pencil to school" and the "possibility of getting into trouble" with Pickell. *Id*. ¶ 46. On October 2, 2023, plaintiff wet themselves in class because they were "afraid to ask to go to the bathroom." *Id*. ¶¶ 47-78. To manage student behavior, Pickell used a "pin system," which relied on shaming students in front of their peers.[2] *Id*. ¶ 48-49. Accordingly, plaintiff did not ask for permission to use the restroom on October 2, 2023, because they feared being shamed through the pin system.

On three occasions in October 2023, plaintiff avoided going to class because of "Pickell and their experiences in her classroom." *Id*. ¶¶ 50-54, 56. Throughout the fall and winter of the 2023-2024 academic year, plaintiff's "attitude toward school dramatically changed," and they "began exhibiting symptoms such as crying, refusing to be dropped off, and showing physical resistance to attending school." *Id*. ¶ 55.

By April 2024, plaintiff's "symptoms had worsened significantly," as they "developed a stress-related facial tic" and reported that Pickell "frequently closed the classroom door in order to yell at students without being heard by others." *Id*. ¶ 57. Pickell was a "bully" who "frequently made students cry," telling one student "that he should 'go back to Kindergarten.'" *Id*. ¶¶ 60-61. Other students and their families expressed concerns about Pickell's classroom behavior. *Id*. ¶¶ 58-59, 63-64. Plaintiff's parents attempted to address their concerns with the

---

[2] Plaintiff alleges that "Pickell apparently had a system of managing behaviors through have a pin located in a public area for each pupil. She would assign points or remove them based on behavior and other students get to see the performance or lack thereof of other students. The pin system was used to enforce behavior and to shame students such as [plaintiff]." ECF No. 1 ¶ 49.

school administration, but such concerns were largely dismissed without the school taking appropriate action.  *Id*. ¶¶ 65-66.

On May 3, 2024, plaintiff was diagnosed with "Disruptive Mood Dysregulation Disorder, Anxiety, Sensory Processing Difficulties, Oppositional Defiant Disorder, and Pathological Demand Avoid, a subtype of autism."  *Id*. ¶¶ 67-68.  Sometime in the following weeks, plaintiff was moved to a different classroom, whereafter plaintiff "showed immediate improvements in their demeanor."  *See id*. ¶¶ 69-70.  Nonetheless, as a result of their experiences in Pickell's classroom, plaintiff "has suffered severe and ongoing emotional trauma that has required extensive medical and therapeutic intervention."  *Id*. ¶¶ 82-87.

On May 20, 2024, plaintiff's parents filed a formal complaint against Pickell with Superintendent Asrani.  *Id*. ¶ 72.  On August 8, 2024, the District issued its administrative determination regarding its investigation into Pickell's treatment of her students, finding that the allegations of emotional abuse were "not sustained."  *Id*. ¶¶ 76-78.  According to the District, "Pickell merely used a 'loud voice' and 'focused on clearly enunciating' to her students."  *Id*. ¶ 78.  The District also found that Pickell's pin system was not a form of public shaming but rather a "behavior chart system."  *Id*. ¶ 79.

On June 30, 2025, plaintiff filed a complaint in this court, alleging the following eight causes of action: (1) violation of civil rights under 42 U.S.C. § 1983; (2) violation of the Americans with Disabilities Act ("ADA"); (3) negligent supervision and training; (4) negligence; (5) intentional infliction of emotional distress; (6) violation of educational rights; (7) breach of the mandatory duty to report child abuse; and (8) violation of California Constitution Article I, § 28(c).  *Id.* ¶¶ 88-226.

### Legal Standard

A complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

3

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Id*.

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

**Discussion**

The first cause of action—a section 1983 claim—is brought against the District and Pickell. *See* ECF No. 1 at 16; ECF No. 9 at 13-15; ECF No. 15 at 13-14. The second cause of action—an ADA claim—is brought against the District. *See* ECF No. 1 at 21; ECF No. 9 at 15-17. The remaining claims allege violations of state law. *See* ECF No. 1 at 23-32. The District and Pickell now move to dismiss all claims in which they are named. *See* ECF No. 9 at 17-21; ECF No. 15 at 14-20.

For the reasons explained below, the court will dismiss the section 1983 and ADA claims in their entirety and decline to exercise supplemental jurisdiction over plaintiff's state law claims.

**I.    Section 1983 Claim**

**A.    The District**

The District argues that it is immune from plaintiff's section 1983 claim. ECF No. 9 at 13-15. Plaintiff acknowledges that school districts generally enjoy Eleventh Amendment immunity but highlights a recent Court of Appeals case that changed the applicable test. ECF No. 14 at 6.

Section 1983 provides that a "person," acting under the color of state law, is liable for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "The Eleventh Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal consent by the state." *Romano v. Bible*, 169 F.3d 1182, 1185 (9th

Cir. 1999). "[T]he bar against suit imposed by the Eleventh Amendment applies with equal vigor in the context of actions based on 42 U.S.C. § 1983. . . ." *NAACP v. State of Cal.*, 511 F. Supp. 1244, 1250 (E.D. Cal. 1981), *aff'd*, 711 F.2d 121 (9th Cir. 1983).

To determine whether California school districts are state agencies for purposes of the Eleventh Amendment, the Court of Appeals applied the five-factor test from *Mitchell v. Los Angeles Community College District*, 861 F.2d 198, 201 (9th Cir. 1988), and held that districts are "agent[s] of the state that perform[] state governmental functions" and, as such, are "immune to suit under the Eleventh Amendment."[3] *See Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992); *see also Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 934 (9th Cir. 2017) ("Considering all of the *Mitchell* factors together, we hold that California school districts . . . remain arms of the state and continue to enjoy Eleventh Amendment immunity.").

Recently, the Court of Appeals found the *Mitchell* test outdated and shifted to the following three-factor test that the D.C. Circuit employs to determine whether an entity enjoys Eleventh Amendment immunity: "(1) the state's intent as to the status of the entity, including the functions performed by the entity; (2) the state's control over the entity; and (3) the entity's overall effects on the state treasury." *Kohn v. State Bar of California*, 87 F.4th 1021, 1030 (9th Cir. 2023) (alterations omitted) (quoting *Puerto Rico Ports Auth. v. Fed. Mar. Comm'n*, 531 F.3d 868, 873 (D.C. Cir. 2008)). While the Court of Appeals changed the relevant legal test, it held that "this new framework is unlikely to lead to different results in cases that previously applied the *Mitchell* factors and held an entity entitled to immunity." *Id*. at 1031.

Indeed, the *Kohn* test has not changed the widespread finding that a school district enjoys Eleventh Amendment immunity. A district court in this circuit recently applied *Kohn*'s three-factor test and found that *Sato*—a pre-*Kohn* Court of Appeals case—strongly supports the finding that California school districts remain arms of the state. The district court held that:

---

[3] In *Mitchell*, the Court of Appeals held that "[t]o determine whether a governmental agency is an arm of the state, the following factors must be examined: [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity." 861 F.2d at 201.

> The court's rationale in *Sato* applies under the *Kohn* framework to school districts. For example, the *Sato* court reaffirmed "California law treats public schooling as a statewide or central governmental function," which addresses the first *Kohn* factor regarding the state's intent. 861 F.3d at 923 (quoting *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 253 (9th Cir. 1992)). Further, the *Sato* court observed "the state still exercises significant control over school districts," which suggests the state controls the ongoing operations of school districts—the second *Kohn* factor. 861 F.3d at 923. Moreover, the *Sato* court affirmed the "state's legal liability for judgments against school districts," which supports a finding the school district is an arm of the state under the third *Kohn* factor regarding the entity's effect on the state treasury. *Id.* (quoting *Belanger*, 963 F.2d at 252.)

*Price v. Tamalpais Union High Sch. Dist.*, No. 24-CV-08033-JSC, 2025 WL 1046644, at *2 (N.D. Cal. Apr. 8, 2025).

Other courts have arrived at the same conclusion. *See Ramirez v. Oakland Unified Sch. Dist.*, No. 24-cv-9223-LB, 2025 WL 1507092, at *6 (N.D. Cal. May 27, 2025) (finding that "all three *Kohn* factors indicate that the district is a state entity"); *Colombo v. Palo Alto Unified Sch. Dist.*, No. 24-cv-0909-NC, 2024 WL 6840046, at *6 (N.D. Cal. Sept. 16, 2024) (finding that, "[b]ased on the three *Kohn* factors, California public school districts are arms of the state entitled to sovereign immunity"). In response, plaintiff does not provide any case law or argument supporting a contrary finding under the *Kohn* test. *See* ECF No. 14 at 6. The court agrees with the other courts that have addressed this issue and finds that the District is an arm of the state and therefore immune to suit under the Eleventh Amendment.

Accordingly, the section 1983 claim against the District is dismissed without leave to amend because it "could not possibly be cured by the allegation of other facts." *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) ("In dismissing for failure to state a claim, a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

   **B.      Pickell**

Pickell argues that she is entitled to qualified immunity from plaintiff's section 1983 claim. ECF No. 15 at 13-14. Plaintiff counters that qualified immunity does not apply because Pickell violated plaintiff's clearly established "Fourteenth Amendment substantive due process right to bodily integrity and freedom from conscience-shocking abuse by a teacher." ECF No. 19 at 6.

Public school teachers "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To determine whether an official is protected by qualified immunity, courts must ask: (1) whether 'the facts the plaintiff alleges show a violation of a constitutional right'; and, (2) whether that right was 'clearly established at the time of the alleged misconduct.'" *Duffy v. Los Banos Unified Sch. Dist.*, No. 1:15-cv-00423-EPG, 2015 WL 6881119, at *5 (E.D. Cal. Oct. 28, 2015) (quoting *Carillo v. Cnty. of Los Angeles*, 798 F.3d 1210, 1218 (9th Cir. 2015)).

Courts have discretion to decide which of these two prongs to address first; if the analysis under one prong shows that an official is entitled to qualified immunity, then the other prong need not be considered. *Pearson v. Callahan*, 555 U.S. 223, 236-43 (2009); *see also Padilla v. Yoo*, 678 F.3d 748, 768 (9th Cir. 2012) ("We have discretion to decide which of the two prongs of qualified immunity analysis to address first. [citation] Here, we consider only the second prong."). Accordingly, the court begins with the second prong by determining whether plaintiff's substantive due process rights were "clearly established at the time of the challenged conduct." *See Carrillo*, 798 F.3d at 1218. While "it is not necessary that a prior decision rule the very action in question unlawful to deny a defendant the protection of qualified immunity," the parameters of the constitutional right "must be sufficiently clear so that a reasonable official would know that his conduct violates that right." *Browning v. Vernon*, 44 F.3d 818, 823 (9th Cir. 1995) (internal quotations and citations omitted).

"Substantive due process 'forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with the rights implicit in the concept of ordered liberty.'" *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (quoting

*Nunez v. City of Los Angeles,* 147 F.3d 867, 871 (9th Cir. 1998)).  In *Corales*, the Court of Appeals held that, where a middle school vice principal "called the students 'dumb, dumb, and dumber,' told them they would have to pay a $250 fine, that he was going to involve the police, and that they would go to juvenile hall, Plaintiffs have not shown conduct egregious enough to shock the conscience." *Id*. at 569.

Here, the parameters of plaintiff's substantive due process right are not "sufficiently clear" such that Pickell "would know that [her] conduct violates that right." *See Browning*, 44 F.3d at 823.  Construing the allegations in the light most favorable to plaintiff, they show that: Pickell was "frequently yelling at them, belittling them, and making demeaning comments" about them; Pickell used a pin system "to shame students such as" plaintiff; and plaintiff wet themselves because they were "afraid to ask to go the bathroom" since they feared "public shaming" by Pickell.  *See* ECF No. 1 ¶¶ 47-49, 58.  Plaintiff, however, does not identify any case law that would have put Pickell on notice that such conduct violated plaintiff's constitutional rights; indeed, the *Corales* decision—finding that insults and threats did not violate students' substantive due process rights—suggests that Pickell did not violate plaintiff's constitutional rights, much less that she should have known that her conduct was unconstitutional in the first place.  *See* 567 F.3d at 568.

The only case plaintiff cites in response involved a "four-year old disabled child" who was "beaten, slapped, and body slammed" by a teacher.  *See Preschooler II v. Clark County School Board of Trustees*, 479 F.3d 1175, 1177 (9th Cir. 2007); ECF No. 19 at 6.  The Court of Appeals found that "no reasonable special education teacher would believe that it is lawful to force a seriously disabled four year old child to beat himself or to violently throw or slam him. Existing law plainly prohibits excessive hitting, dragging or throwing of public school children." *Preschooler II*, 479 F.3d at 1182.  Plaintiff acknowledges that *Preschooler II* "involved physical abuse" but argues that its "core principle—protection of vulnerable children from abuse by those in authority—extends beyond identical factual scenarios." ECF No. 19 at 6.  But the Court of Appeals did not go that far; indeed, plaintiff's citation for that assertion is seemingly to the court's discussion of supervisory liability, which does not support plaintiff's assertion.  *See* ECF

No. 19 at 6 (citing *Preschooler II*, 479 F.3d at 1183).  To be sure, the Court of Appeals only addressed physical abuse because those were the facts at hand, and thus this case does not clearly establish that Pickell's conduct—which plaintiff does not allege included physical abuse— violated plaintiff's constitutional rights.  *See Preschooler II*, 479 F.3d at 1180-82.

Lastly, plaintiff argues that, even if there is a not a case with comparable facts, "the 'obviousness' doctrine defeats qualified immunity where conduct is patently beyond constitutional bounds." ECF No. 19 at 6.  The Supreme Court held that, in some instances, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *United States v. Lanier*, 520 U.S. 259, 271 (1997) (cleaned up).  Plaintiff cites two cases in which the Supreme Court applied this doctrine and found that qualified immunity did not apply.  *See* ECF No. 19 at 6 (citing *Hope v. Pelzer*, 536 U.S. 730 (2002) and *Taylor v. Riojas*, 592 U.S. 7 (2020)).  In both cases, however, the court encountered egregious facts.  *See Hope*, 536 U.S. at 734-35 (prisoner was tied to a "hitching post" outside in the sun for seven hours and "was given water only once or twice and was given no bathroom breaks"); *Taylor*, 592 U.S. at 7-8 (prisoner was placed in a prison cell that "was covered, nearly floor to ceiling, in 'massive amounts of feces'" for four days, and then moved to another "frigidly cold cell" that had "raw sewage" overflowing, where prisoner was forced to "sleep naked in sewage" for two days).  Here, the factual allegations do not rise to such a shocking level, and thus the court finds that the "obviousness" doctrine does not apply.

Moreover, it would be incongruent with the Court of Appeals' precedent to find that yelling at and shaming a student is an "obvious" constitutional violation.  In *Corales*, as noted, the Court of Appeals held that a middle school vice principal did not violate students' due process rights by calling them names and threatening them with police involvement and jail.  567 F.3d at 569.  Those factual allegations were particularly troubling because one student was "on probation" and "could have been sent to jail for three years if he violated the terms of his probation."  *See id*.  In light of the Court of Appeals' finding that such conduct did not violate

students' substantive due process rights, the court finds that it is not "obvious" that Pickell's conduct violated plaintiff's constitutional rights.  *See* ECF No. 19 at 7.

Accordingly, plaintiff's section 1983 claim against Pickell is dismissed.  However, because plaintiff could potentially save this claim by adding factual allegations that alter the qualified immunity analysis, leave to amend is appropriate.  *See Doe*, 58 F.3d at 497.

## II.    ADA Claim

The District argues that plaintiff does not plausibly allege that they were discriminated against because of their disabilities.  ECF No. 9 at 15-17.  Plaintiff counters that their claim under Title II of the ADA is properly pleaded.  ECF No. 14 at 7-10.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  "To state a claim under Title II of the ADA, a plaintiff generally must show: (1) she is an individual with a disability; (2) she is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) she was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of her disability."  *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on other grounds*, *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015).

Furthermore, to show that a defendant acted intentionally, a plaintiff must satisfy the deliberate indifference standard, which "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood."  *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001).  "When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test."  *Id*.

Here, plaintiff alleges that they were diagnosed with "Disruptive Mood Dysregulation Disorder, Anxiety, Sensory Processing Difficulties, Oppositional Defiant Disorder, and Pathological Demand Avoid, a subtype of autism" on May 3, 2024.  *See* ECF No. 1 ¶¶ 67-68. Plaintiff alleges that the District discriminated against them on the basis of these disabilities, including by "failing to provide reasonable accommodations for their anxiety and sensory processing difficulties," allowing Pickell "to create and maintain a classroom environment particularly harmful to a child with anxiety," and denying plaintiff "meaningful access to education by allowing conditions that triggered and worsened their anxiety."  *See id*. ¶¶ 132-33, 137.

However, plaintiff does not suggest that anyone—including themselves or their parents— knew about their disabilities prior to the May 3, 2024 diagnosis.  This timeframe is essential to plaintiff's ADA claim because they do not allege any instances of discrimination after the May 3, 2024 diagnosis.  Indeed, upon plaintiff's request, plaintiff was transferred to another classroom no later than May 16, 2024.  *See id*. ¶¶ 67-70.  Accordingly, there were, at most, thirteen days between plaintiff's diagnosis and their transfer to another classroom, and plaintiff does not allege any discrimination in that narrow time period.  As such, because plaintiff does not plausibly allege that the District knew about their disabilities when they were in Pickell's classroom, the complaint does not plausibly state that the District discriminated against plaintiff because of their disabilities.

Plaintiff argues that the District knew about their disabilities before May 3, 2024 because "[a] seven-year-old child developing a facial tic, wetting himself in class, and exhibiting severe school avoidance behaviors presents obvious signs of disability-related needs requiring accommodation."  ECF No. 14 at 8.  But this assertion is unsupported by the factual allegations. Indeed, plaintiff does not plead that they were disabled on account of their facial tic or wetting themselves; rather, they allege that they were disabled on the basis of their diagnoses by a medical professional, which included anxiety and sensory processing difficulties.  *See* ECF No. 1 ¶¶ 67-68, 130, 132-33, 137-38.  Moreover, while plaintiff argues that they exhibited "severe school avoidance behaviors," the complaint includes only the following three instances: (1) on

11

October 4, 2023, plaintiff sat "alone in the cafeteria" for "approximately 10 minutes" after school had started; (2) on October 10, 2023, plaintiff "seemed angry and was standing outside" Pickell's classroom door, "apparently reluctant to enter"; and (3) on October 19, 2023, plaintiff "spent the entire day in the school office" to avoid going to class. *See id.* ¶¶ 50-54.  Plaintiff does not allege any other instance in which they were present at school but avoided Pickell's classroom, and plaintiff does not adequately explain why these three instances constituted "severe school avoidance behaviors" such that it was "obvious" that plaintiff needed reasonable accommodations.  *See* ECF No. 14 at 8.  As such, plaintiff has not plausibly alleged that their disabilities were obvious such that the District had knowledge thereof anytime between September 2023 and April 2024—the time period in which all alleged discrimination took place.[4]

Accordingly, plaintiff's ADA claim is dismissed.  As with the section 1983 claim, however, plaintiff is granted leave to amend because they could potentially save this claim by adding factual allegations.  *See Doe*, 58 F.3d at 497.

**III.    Supplemental Jurisdiction**

Plaintiff's remaining claims allege violations of state law.  The court has federal question jurisdiction over the instant action.  *See* ECF No. 1 ¶ 5 (citing 28 U.S.C. § 1331).  Given the finding that plaintiff has not stated a federal claim, the court declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses those claims without prejudice.  *See* 28 U.S.C. § 1367(c)(3) (a district court "may decline to exercise supplemental jurisdiction over a claim" if the court "has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (finding that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims").

---

[4] Plaintiff also argues that the District had knowledge of plaintiff's disabilities because they filed a due process complaint with the Office of Administrative Hearings.  ECF No. 14 at 8. However, because plaintiff did not file that complaint until February 11, 2025, it did not provide the District with notice of plaintiff's disabilities while plaintiff was in Pickell's classroom.  *See id.*

Accordingly, it is hereby ORDERED that:

1. Defendants' motions to dismiss, ECF Nos. 9 and 15, are GRANTED.

2. Plaintiff's section 1983 claim against the District is DISMISSED without leave to amend.

3. The remaining claims against the District and Pickell are DISMISSED with leave to amend.

4. Within twenty-eight days of the date of this order, plaintiff may file an amended complaint consistent with this order.

IT IS SO ORDERED.


Dated:    March 16, 2026                          _____
                                                 JEREMY D. PETERSON
                                                 UNITED STATES MAGISTRATE JUDGE

13